**RECEIVED**
CM
5/3/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NATHANIEL SATTERFIELD JR.

    **Plaintiff(s)**

**JUDGE FEINERMAN**
**MAGISTRATE JUDGE HARJANI**

    **Vs.**

Case No. **1:22-CV-02331**

**RANDOM**

HSBC BANK USA, N.A.

**JURY DEMAND**

WILMINGTON SAVINGS FUND SOCIETY

FSB, AS TRUSTEE OF STANWICH MORTGAGE

LOAN TRUST-A

VICTOR VITA OF VYLLA HOME

CARRINGTON MORTGAGE SERVICES LLC/

GERARDO ZAMUDIO

    **Defendants.**

Cook County Sheriff's Office, Eviction, Levy,

& Warrant Unit

County of Cook

**Defendants** (Continued).

**PRO-SE PLAINTIFF'S VERIFIED COMPLAINT FOR VIOLATION OF FAIR HOUSING**

**(FHA) AND CONSTITUTIONAL RIGHTS**

Pro-se plaintiff, Nathaniel Satterfield Jr. ("the Plaintiff") alleges the following:

### Nature of the Case

1. This is a case in which the state courts and Sheriff's Officers have facilitated a process in Cook County that has enabled a wealthy corporate group (the HSBC Group) already found guilty of foreclosure fraud by administrative agencies and federal bank regulators, to illegally and unethically go after the homes adversely affected by the group's own unfair and deceptive business practices, which were also found to be discriminatory by the Cook County States Attorney.

2. Private party defendant, HSBC Bank USA N.A. and its related entities ("HSBC"), thru its employees, hirelings, agents, assigns or successors, with the aid of the state court judicial system, has been threatening, intimidating, and coercing the Plaintiff for the last 12 years with unauthorized lawsuits and the threat of an unlawful eviction, culminating in

1

an actual unlawful eviction finally taking place on the early morning of
March 30, 2022.

3. Unlawful evictions do take place in Cook County, Illinois (See *Soldal v. Cook
County,* 506 U.S. 56 (1992).

4. This claim is under the FHA for violation of the Plaintiff's fair housing rights
pursuant to 42 U.S.C. Section 3601, particularly the standalone claim, 42
U.S.C. Section 3617-Intimidation, coercion, plus, Retaliation (Section 818).

5. This is also a claim for violation of the Plaintiff's civil rights as protected by
the Constitution, including 14th Amendment due process, and laws of the
United States under Sections 42 U.S.C. Sections 1983, 1985, and 1986.

### Jurisdiction and Venue

6. The Court has jurisdiction under 42 U.S.C. Section 3613 and 28 U.S.C.
Sections 1331 and 1343, because the claims alleged herein arise under laws
of the United States; also, under 28 U.S.C. Sections 1343 and 1367.

7. Venue is proper because a substantial part of the events and omissions
giving rise to the claims occurred in this district pursuant to 28 U.S.C.
Section 1391.

## Introduction

8. The Plaintiff, Nathaniel Satterfield Jr., over the age of 21, and a resident of Cook County, has been living at the subject property, 1411 South 20th Avenue, Maywood IL 60153 ("the property"), located within the 4th Municipal District for Maywood/Proviso, ever since 2005.

9. According to the Public Record, this is the year in which the property was last sold, on or about July 12, 2005, for around $162,000.

10. The Plaintiff and his family were induced to abandon their home, momentarily though, for 4 years, roughly between September of 2012 and September of 2016, due to HSBC's unmerited, unauthorized foreclosure victory. However, the Plaintiff and his family returned to their home in 2016, after HSBC had failed to take over the property. HSBC had also failed to maintain the outside premises and property taxes, subjecting the property to nuisance abatement liens and a tax sale. The Plaintiff redeemed the property taxes by December 2, 2016, and incurred a great expense making the abandoned property hospitable again.

11. The Plaintiff's ownership of the property is corroborated by a title report and property tax records.

12. At all times relevant to this controversy, the Plaintiff and his entire household (the Plaintiff's elderly, mentally handicapped uncle, Willie C. G., and Antoineeta Barker ("Ms. Barker") are persons protected under the FHA, such as Sections 3603-3606 of 42 U.S.C. Section 3617, or Sections 803-806 of 42 U.S.C. 3601 and following.

### Private Party Defendants

13. The private party defendants include:

- HSBC Bank USA, N.A.-located at 1800 Tysons Blvd., Mclean VA 22102 or 636 Grand Regency Blvd., Brandon FL 33510.

- Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust-A-located at 500 Delaware Avenue, 11th Floor, Wilmington DE 19801. [Please note that the SEC (Security Exchange Commission) had already found that this transfer agent company was being deceptively used by unknown principals. In the context of transfer agent misconduct, the SEC pointed out, "it is very likely that this entity represented no one."—Administrative Agency Action No.: 15-Cr-23 (RGA).] So, this company might be a nominal party.

- Victor Vita (Broker License # 475150700) of Vylla Home-located at 11512 W. 183rd Place SE, Orland Park IL 60467

4

- Gerardo Zamudio/Carrington Mortgage Services LLC-located at 1600 Douglass Road, Suite 200-A, Anaheim CA 92806 or 6252 N. Lincoln Ave. Chicago, IL 60659.

### State Actor(s)

14. The State Actors are:

- Cook County Sheriff's Office, Eviction, Levy, & Warrant Unit-50 W. Washington Street, #701, Chicago IL 60602.
- Judicial officers who entered possession orders in favor of sham litigants.
- County of Cook-118 N. Clark Street, Chicago IL 60602.

### Further Factual Allegations; An Unauthorized Foreclosure

15. It was the Plaintiff, among hundreds of thousands of other aggrieved citizens, who reported the private party defendant, HSBC Bank USA, N.A. and its related entities ("HSBC") to administrative agencies and federal bank regulators, resulting in HSBC being sued and fined multiple times for financial, mortgage loan, and foreclosure fraud.

16. Essentially out of the same facts, even the Cook County States Attorney sued HSBC in this same federal district March 21, 2014 (Civil Action No.:

1:14-CV-02031) under the FHA, finding that HSBC's unfair, deceptive, predatory, and discriminatory business practices were specifically geared towards persons protected under federal Fair Housing Law.

17. Cook County also found that a "pattern practice" of discrimination was involved that has heavily impacted entire minority-filled communities, resulting in scores of properties being left vacant in the Cook County area.

18. Private party defendant, HSBC Bank USA, N.A., with business addresses at 1800 Tysons Blvd., Mclean VA 22102 and 636 Grand Regency Blvd. Brandon FL 33510, was held accountable by the combined forces of the Illinois Attorney General, 49 other state attorney generals, HUD, the CFPB (Consumer Financial Protection Bureau), and the U.S. Department of Justice for violating the federal False Claims Act and the state consumer protection laws in virtually every jurisdiction of the country, with respects to its loan origination, servicing, and foreclosure practices (particularly the foreclosures that were conducted between January 1, 2008 and December 31, 2012). [Request to take Judicial Notice of the DOJ's February 5, 2016 Press Release No.: 16-148 under the topics, False Claims Act, Mortgage and Foreclosure Fraud.]

19. HSBC conducted a lot of fraudulent business through nominal, throw-away companies, such as *Beneficial Illinois Inc.*, *HSBC Mortgage Services*, and *Beneficial Financial I Inc.*, to such an extent that its real banks became undercapitalized by 2008 and 2009.

20. When it created and recorded the underlying mortgage refinance loan against the Plaintiff's property, HSBC deceptively used Beneficial Illinois Inc., a foreign corporation that was only licensed to make small consumer loans, operating out of an unauthorized or illegal branch location. This underlying loan, made outside of government regulatory oversight, can be found in Cook County land records; created January 3, 2007 and recorded on January 4, 2007. [Request to take Judicial Notice of a Property PIN # search for 15-15-116-004-0000 at www.cookrecorder.com; notice Document No.: 0700436032.]

21. Beneficial Illinois Inc.'s consumer installment loan license with the IDFPR (Illinois Department of Financial and Professional Regulation) expired on or around March 9, 1992, and was never reinstated.

22. Right after being used to file its false and fictitious foreclosure suit against the Plaintiff's home May 28, 2010 (Chancery Case No.: 2010-CH-22995), the

7

unlicensed foreclosing entity, Beneficial Illinois Inc. voluntarily forfeited its

Certificate to do business in the State of Illinois by June 23, 2010.

23. The unlicensed foreclosing entity was purportedly succeeded by Beneficial

Financial I Inc., a foreign corporation that filed its purported final report

with the Illinois Secretary of State in 2017, and was completely merged out

of business by December 4, 2018. One hundred percent of its assets or

capital stock was supposed to have gone to the HSBC Finance Corporation.

## Sham Eviction Litigation

24. Through this nominal business that has since been discarded, HSBC caused

the following unauthorized foreclosure-related eviction suits to be filed

against the Plaintiff, three times in a row, in an inappropriate municipal

district of the Cook County Circuit Court, when it had no actual legal or

equitable right to do so:

- Sealed Case No.: 2017-M1-718601 filed November 2, 2017

- Sealed Case No.: 2018-M1-707362 filed May 14, 2018

- Sealed Case No.: 2018-M1-717451 filed October 25, 2018

25. Case Number 18-M1-717451 is a second refiling of Case Number 18-M1-

707362. The plaintiff party's name was just fraudulently changed.

8

26. Orders of Possession were wrongfully entered in favor of the nominal businesses deceptively used as sole plaintiffs in the last 2 subsequent eviction actions relating to the unauthorized foreclosure, respectively; Sealed Case Nos.: 18-M1-707362 and 18-M1-717451.

27. The courts permitted HSBC to simply drop its nominal business, Beneficial Financial I Inc., and add the transfer agent company, Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust-A ("Wilmington") to the sham litigation, without HSBC or "*Beneficial*" having to plead a separate or distinct cause, and without ever invoking the statute that governs intervention.

28. This enabled and encouraged the other private party defendants to continue to pursue the Plaintiff's property using sham litigation without having any actual legal rights in the property.

29. Private party defendants HSBC and Wilmington through their counsel began falsely representing to the courts, and to anyone making inquiry, a false sale of the Plaintiff's property, unenhanced by any reliable factual proofs of an actual, true sale. Their false representations fail at providing any actual sale price and sale date.

9

## A Fabricated Quitclaim Deed

30. The private party defendants' only proof of a "sale" is a fabricated quitclaim deed falsely recorded in Cook County land records March 28, 2018, during the pendency of litigation (Document No.: 1808718063).

31. In this false quitclaim deed, HSBC uses the nominal business, Beneficial Financial I Inc., to quitclaim the Plaintiff's property over to Wilmington, when neither the purported grantor, or grantee can show the prerequisite proofs of having a right to sell, foreclose upon, possess, or simply transfer the property. The false transfer was being presented to fabricate the "lie" that the property had sold all of a sudden, during the midst of the first eviction suit.

32. Interestingly, the trial court judge who presided over the 1st eviction action was African American unlike the other judges who were over the other 2 subsequent cases in the trial court. The case was voluntarily non-suited without due notice in less than a month it was filed (Sealed Case No.: 17-M1-718601, filed November 2, 2017 and voluntarily withdrawn by November 30, 2017).

33. But regards to the "quitclaim", even the address provided for the "grantee" (Wilmington) in this false deed is misleading. It is a business address used

10

for the private party defendant, Carrington Mortgage Services LLC, a
separate and distinct limited liability company not named as a plaintiff
party in any of the underlying eviction suits.

34. It can be determined on the face of this "quitclaim deed" that its purported
sale or transfer involved no adequate consideration given in exchange for
fair market value, as no taxes were paid to the local government. The deed
is stamped real estate transfer tax exempt.

35. Nothing material is attached to the false quitclaim deed that would
evidence a bona-fide sale, such as a purchase agreement, current property
inspection report, title insurance policy, etc.

36. A quitclaim deed was used, instead of a warranty deed. Thus, the
purported grantor, private party defendant HSBC, masquerading as one of
its own subsidiaries (*Beneficial*), did not, and cannot guarantee that title
passed in good faith.

**The Sale or Transfer of Void Mortgage Debt + Coercion to Remortgage the
Subject Property**

37. All of the pleadings of HSBC, in concert with private party defendant
Wilmington are wholly false and fictitious for being founded upon a bogus
foreclosure and fraudulently obtained, void foreclosure "debt".

11

38. Upon the Plaintiff's information and belief, HSBC either sold or simply transferred the underlying, non-performing, securitized loan created without authority to a 3rd party vendor or "servicer", in willful indifference of the illegality of the loan transaction. This encouraged and emboldened private party defendants Victor Vita of Vylla Home and Gerardo Zamudio of Carrington Mortgage Services LLC to get involved with HSBC's own unfair, deceptive, predatory, and discriminatory business practices aimed at minorities. The false transfer(s) also caused 2-3 data breach notices to be mailed out to the Plaintiff's home.

39. Ever since 2018, Victor Vita of Vylla Home and Gerardo Zamudio of Carrington Mortgage Services LLC have been trying to trick or coerce the Plaintiff into remortgaging his property, when the property is free and clear of any valid mortgage loans.

40. In one encounter, Victor Vita asked the Plaintiff, "How much do you owe on the mortgage?", and implied that the Plaintiff could get caught up.

41. Victor Vita also falsely listed the Plaintiff's property for sale over the Internet numerous times, even before the unlawful eviction. As of this writing, many of the listings have gone into the process of being changed.

42. The Plaintiff spotted one ad (MLS # 11025892) that was modified on or around March 3, 2021, asking $129,900 for his property. Victor Vita of Vylla Home was the listing agent.

43. Even NOW, the Plaintiff keeps receiving offers in the mail from attorneys soliciting their home-owner/seller representation services to the Plaintiff, saying that the Plaintiff has recently listed his property with Victor Vita of Vylla Home. Victor Vita is not the Plaintiff's real estate agent, however.

44. The private party defendants, collectively, have taken up two different conflicting positions. On one hand, they have staked their false claims on a purported foreclosure. On the other, their claims are premised on a void mortgage that strangely survived the "foreclosure", attended to by a false transfer and/or quitclaim deed. And yet nobody in authority has tasked them to prove the veracity of such conflicting false claims or positions.

### Subversion of Plaintiff's Legal Process + State Action

45. The judicial officers (including the tribunals) who presided over the false, fictitious claims of the private party defendants are involved in this controversy as well.

46. Evidently, the judicial officers must have conspired with the more financially attractive, private party defendants to deprive the Plaintiff of his

property, because the state courts continued to exercise jurisdiction in favor of the nominal businesses that were clearly being misused by the private party defendants in an inappropriate venue (the 1st Municipal District for Chicago, instead of the 4th for Maywood/Proviso).

47. Jurisdiction became fixed in the limited jurisdiction of eviction court, where judges can arbitrarily refuse to hear serious title disputes.

48. The judicial officers deprived the Plaintiff of a full and fair hearing, when they, time and time again, willfully ignored any and all legal precedent adverse to the private party defendants' claims, such as federal court decisions, administrative agency actions, and enforcement actions by federal bank regulators--like the OCC (Office of the Comptroller of the Currency) and Board of Governors for the Federal Reserve.

49. The eviction orders for July 25, 2018 (Sealed Case # 18-M1-707362) and February 7, 2019 (Sealed Case # 18-M1-717451) were routinely entered against the Plaintiff and his uncle without the courts ever investigating the private party defendants' fraudulent use of anti-consumer, sham business practices, the sudden false representation of a "sale", and the false, fabricated quitclaim deed—automatic perjuries and document fraud.

14

50. Once again, the orders of possession were even entered in blatant disregard of the fact that the eviction actions were repeatedly and deliberately filed under seal in an inappropriate municipal district of court, a trial tactic identified by federal law as an abusive debt collection practice used by debt collectors, including collection lawyers. This greatly prejudiced other attorneys from assisting the Plaintiff with the cases.

51. It was the February 7, 2019 Eviction Order that was wrongfully enforced March 30, 2022 against the Plaintiff and his elderly uncle (The Plaintiff had the domestic chore of looking after his uncle, by the way.).

52. The trial court judge entered the underlying order without jurisdiction, because it arises from a 2nd refiling, when Illinois Law permits only 1 refiling of the same cause, filed against the same group of defendants, seeking the same property as relief.

53. The last two cases were disposed of in a poorly investigated unpublished opinion (2019 IL App. (1st) 181855-U) that is highly prejudicial against the Plaintiff and the truth. It deliberately omits the existence of the first foreclosure-related eviction suit, when there was clear evidence on hand to show that the same foreclosure-related eviction suit had been filed 3x in a row. The opinion also willfully avoids any discussion about the fabricated

15

quitclaim deed, and is clearly one-sided, focusing only on the procedural difficulties of the unrepresented party (the Plaintiff).

54. For the reason set forth previously in paragraph 45, the underlying possession order that was wrongfully enforced May 30, 2022 is void.

55. This underlying order of possession is also facially invalid for being older than 120 days. The underlying possession order is dated for February 7, 2019 making it roughly 3 years old.

56. Even with its 1st extension for more time to enforce, the underlying possession order that was enforced is still statutorily out-of-time, as its first extension expired by 6/19/2020 (Sealed Case # 18-M1-717451).

57. The Plaintiff never received proper notice of a 2nd extension of time to enforce, and the private party defendants' delay was not due to COVID-19 concerns.

58. Whenever the Plaintiff would file formal complaints with one of HSBC's and Wilmington's prudential federal regulators (the CFPB), with regards to the harassing litigation, the private party defendants HSBC and Wilmington would back away from their unsound practices and say that the suits were filed without their authorization.

59. Wilmington placed the blame on Carrington Mortgage Services LLC, in its response to the CFPB, and also referenced a purported loan, implicating a purported default (CFPB Complaint ID: 211202-7712284).

60. Whether private party defendants Victor Vita of Vylla Home, or Carrington Mortgage Services LLC are actively working as agents for HSBC or Wilmington, has not been disclosed. Victor Vita has referred to Carrington Mortgage Services LLC as being "the Bank" that he works for.

61. Local police officers who were called to the scene of the unlawful eviction, but who failed to stop Cook County Sheriff's Officers from treading over the due process rights and basic human right to fair housing of the Plaintiff and his entire household, seemed to believe that Victor Vita of Vylla Home and Carrington Mortgage Services LLC were acting as agents of Wilmington, the sole plaintiff named on the underlying possession order.

62. Yet, private party defendants Wilmington, Victor Vita of Vylla Home, and Carrington Mortgage Services LLC never did plead a default to foreclose on the Plaintiff's property in court.

63. And when HSBC falsely and fictitiously pled a default back in 2010, it was found to have violated state consumer protection law, among other laws.

17

64.HSBC left the names of the real substantial bank(s) and the Plaintiff, who

was a main contributor to the mortgage, out of the underlying loan

transaction on purpose to obfuscate or hide liability, and to keep both

HSBC Bank USA N.A. and the Plaintiff, Nathaniel Satterfield Jr. out of court.

65.Just as the private party defendants are only pretending to have an

enforceable interest in the Plaintiff's property, Cook County Sheriff's

Officers only pretended to have a legally valid order to enforce, when in

reality they did not. The possession order that they knew was invalid, for

being invalid on its face alone, is void for being procured through consumer

fraud, false pleading, and a 2nd refiling of the same unauthorized cause.

66.Cook County Sheriff's Officers conspired with the private party defendants

to deprive the plaintiff of his home, operating under the color of law, when

in actuality the Sheriffs had no legal reason to enter, search, and aid the

private party defendants in taking over the Plaintiff's home.

67.Sheriff's Officers unlawfully ousted the Plaintiff from his home March 30,

2022, abusing the authority given to them by the State. And no one in state

government has stepped in to correct what the officers have done.

68.Sheriff's Officers began arriving on the scene, outside of the Plaintiff's

home as early as 7:30 am, and made their move sometime after 8:00 am,

once a van load of Sheriff's Officers arrived equipped with a green battering

ram-like device. There was several Sheriff's Officers that showed up, ready

to force entry. So, the Plaintiff opened his front door to prevent the Sheriffs

from breaking his door down.

69. A Caucasian male deputy sheriff with grayish-white hair wearing glasses

(one of the officers who arrived on the scene as early as 7:30 am), alleged

that Deputy Officer Evans, Star # 10084, a short Hispanic-looking woman

also wearing glasses, was in charge. But the male officer did most of the

talking.

70. The Sheriff's Officers willfully failed to determine whether or not all of the

residents living at the property were named on the order, dispensing with

their usual custom or policy practice. They even took care not to leave a

copy of the facially invalid order with the Plaintiff.

71. A Sheriff's Office employee named Marcus arranged for the Plaintiff's

elderly uncle, Willie C. G., to be taken to a nursing home facility some 18

miles away in Rodgers Park (Fargo Healthcare Center located at 1512 W.

Fargo Ave, Chicago IL 60626). It took the Plaintiff roughly 3 days to locate

his uncle.

72. Though Sheriff's Officers escorted the Plaintiff out of his home and onto the street, neither the Sheriff's Officers or private party defendants Victor Vita of Vylla Home, and an unidentified man from Carrington Mortgage Services LLC who was also there, took care to secure the premises. The Plaintiff's front door was left slightly ajar and unlocked.

73. Strangely, after the Sheriffs drove off, and when the Plaintiff headed back inside the property to fetch a few essential items, defendant Victor Vita asked the Plaintiff for permission to enter the property just to take pictures of the rooms. The Plaintiff told Victor Vita to do whatever he had to do, before gathering a few of his things and then leaving.

74. It was the Plaintiff who locked his own property up on the day of the unlawful eviction. He did not give Victor Vita his keys.

75. Before going their separate ways, however, Victor Vita asked the Plaintiff questions to ascertain whether or not the Plaintiff would be interested in buying back his own property from him. Victor Vita gleefully told the Plaintiff, "You can be my first client!"

### An Illegal Lock-Out or Trespass

76. After the Plaintiff did not respond to Victor Vita's repeated attempts to trick or coerce him into remortgaging his property, Victor Vita and the

20

unidentified man returned to the property with a locksmith to change the

locks on the doors April 4, 2022, around 11:00 am.

77. But this time they encountered Ms. Barker, the other resident who was still

living at the property and who was able to impede their progress. So,

Victor Vita called the local, Maywood Police.

78. Maywood police were reluctant at first to force Ms. Barker to leave the

property after she had verified her residency with them, and even told

Victor Vita that he would have to go back to court and get an order naming

Ms. Barker as a defendant party, before leaving the scene accompanied by

Victor Vita and the other 2 men that were with Mr. Vita.

79. About an hour later, Maywood Police, still accompanied by Victor Vita and

the other men, returned to the property and told Ms. Barker that she had

to go, otherwise the police would have to arrest her for trespassing. So,

Ms. Barker after gathering a few of her belongings, left the property and

Victor Vita, with the aid of a local police presence, proceeded to break into

the Plaintiff's property and change the locks.

80. The Plaintiff approached the local police that day to explain that what

Victor Vita and Carrington Mortgage Services LLC were doing is "criminal",

however, the police, including the Village Manager, viewed it all as a "civil

matter" to be taken up with the courts. Police told the Plaintiff that he should sue Cook County.

81. Days later, the Plaintiff spotted another bogus sale ad on the Internet in which Victor Vita was falsely selling the Plaintiff's property with all of his personal belongings still locked up inside "As-Is", asking for cash up front, and with no warranties. The Plaintiff has seen such an ad on websites such as Zillow, Redfin, and Realtor.com.

82. From April 4, 2022 to present, the Plaintiff and the members of his household have been locked out of their own home.

83. The actions of the private party defendants and state actors, Collectively, have proven to be very threatening, intimidating, and coercive. They were also done knowingly, intentionally, and maliciously.

84. As a result of their concerted action, which is comprised of a number of wrongful protracted actions that continue to be unfair, deceptive, predatory, and discriminatory, the Plaintiff and his household have been damaged physically, economically, and emotionally. The Plaintiff has suffered medically treated maladies such as facial twisting and rising high blood pressure that can be shown to be connected to the undue stress.

85. Damages are also ongoing and continuing.

## Concerted Action

86. In blatant disregard of the truth and out of a lack of concern for the welfare of others, the private party defendants have directly or indirectly caused void possession orders to be placed with the Cook County Sheriff's Office March 16, 2017, August 6, 2018, and October 25, 2021.

87. This prompted Cook County Sheriff's Officers to make the following unwarranted visits upon the Plaintiff at his home, intimidating and threatening him with unlawful eviction:

- April 25, 2017

- May 26, 2017

- August 31, 2018

- November 3, 2022

- January 18, 2022

- March 30, 2022

88. The Plaintiff has never seen a certified copy of the underlying orders, such as the August 14, 2012 Order Approving Sale from Chancery Case # 10-CH-22995, or the July 25, 2018 and February 7, 2019 possession orders.

## COUNT-I 42 U.S.C. Section 3617-Intimidation, coercion, also

## Retaliation (Section 818)

89. The Plaintiff re-alleges and incorporates all of the above to show that the collective actions of both the private party defendants and state actors, working in concert with one another, were, and still are threatening, intimidating, and coercive under 42 U.S.C. Section 3617.

90. 42 U.S.C. Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of [any right granted or protected by sections 3603 thru 3606 of this title.]."

91. The acts, policies, procedures, and practices of both the private party defendants, judicial officers, and Cook County Sheriffs have made, and continue to make housing unavailable to persons on the basis of race and/or color, even disabilities, in violation of 42 U.S.C. Section 3604(a).

92. The private party defendants intended to threaten, intimidate, and coerce the Plaintiff into either remortgaging his property or leaving it, using the threat of unlawful eviction, aided by the judicial and civil processes.

93. The private party defendants submitted false or fabricated documents to peace officers which is automatically "criminal" under 720 ILCS 5/31-4 and 5/26-1.

24

94. The conduct of HSBC and its related entities is also retaliatory under Section 818 of the FHA, because the Plaintiff reported them to the OCC, the Illinois Attorney General, HUD, the DOJ, the CFPB, among other agencies, resulting in them having to make many cash settlements and suffering fines.

95. HSBC in turn encouraged the other private party defendants to pick up where they left off with the unfair, deceptive, predatory and discriminatory business practices geared towards minorities, by passing along the void mortgage to Victor Vita of Vylla Home and Carrington Mortgage Services LLC.

96. Only with the aid of Cook County Sheriff's Officers, operating under *the color of law*, were Victor Vita and Carrington Mortgage Services LLC able to unlawfully rest control over the Plaintiff's property from him.

97. The private party defendants benefitted from a threatening police presence.

98. Victor Vita and Carrington Mortgage Services LLC illegally locked the Plaintiff and his family out of their home by April 4, 2022, denying them free access to their home and personal property.

25

99. Now Victor Vita and Carrington Mortgage Services LLC are spitefully seeking to sell the Plaintiff's property under false pretenses with the personal belongings of the Plaintiff and his family still locked up inside, when the property does not factually and legally belong to them.

## COUNT-II-42 U.S.C. Sections 1983, 1985, and 1986

100.    Plaintiff re-alleges and incorporates all of the above for the purpose of establishing a violation of his rights under 42 U.S.C. Sections 1983, 1985, and 1986.

101.    Cook County Sheriffs knowingly and intentionally supported the private party defendants in their bid to threaten, intimidate, and coerce the Plaintiff and his family into leaving his own property, making a number of unwarranted visits to the Plaintiffs home just to threaten him and his family with unlawful eviction.

102.    When they escorted the Plaintiff off the premises of his own property, the Cook County Sheriff's Officers ultimately turned over possession of the Plaintiff's property to Victor Vita and Carrington Mortgage Services LLC, who are neither landlords, owners of the property, or agents of the real property owner, but rather house thieves.

103.    The unwitting support of local police enabled Victor Vita of Vylla

Home, and the unidentified man from Carrington Mortgage Services LLC to

illegally change the locks to the Plaintiff's home April 4, 2022.

104.    Sheriff's Officers do have the discretion to reject an order on the

basis of state Legislature found at 735 ILCS 5/9-117 and 735 ILCS 5/15-

1508(g).

105.    On the Cook County Sheriff's Office's own official website, eviction

plaintiffs are even admonished to: "Please review and comply with 735 ILCS

5/9-117 to ensure that all Orders of Possession remain enforceable."

[Request to take Judicial Notice of

https://www.cookcountysheriff.org/departments/courts/civil-

services/evictions/eviction-procedure-plaintiffs-guide/

106.    735 ILCS 5/9-117 declares that an order of possession older than 120

days old is invalid.

107.    735 ILCS 5/15-1508(g) says that an order of possession cannot be

enforced on residents generically named.

108.    In view of the latter, the Sheriff's Officers had reason to know that

the February 7, 2019 Eviction Order was at least invalid on its face.

109.     The 14th Amendment of the U.S. Constitution, Section 1 says in relevant part that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

110.     18 U.S.C. Sections 241 and 242, though not the basis of the Plaintiff's private suit, still makes it "criminal" for Cook County Sheriffs and the private party defendants to conspire to threaten and intimidate the Plaintiff and his family in the free exercise or enjoyment of rights secured by the Constitution and laws of the United States.  [This matter should be pursued by the DOJ or FBI.]

111.     And yet that is what Cook County Sheriffs and the private party defendants have done.  Under the color of, or aided by the color of law, they have willfully, knowingly, and maliciously subjected the Plaintiff and his family to an unlawful eviction March 30, 2022, followed by an illegal lock-out or trespass April 4, 2022, depriving the Plaintiff and his family of the use of their home and personal property without proper authority.

112.     Plaintiff requests that this case be tried by jury.

28

113.     Plaintiff also claims violation of rights that may be protected by the

laws of Illinois, such as malicious prosecution, abuse of process,

unauthorized filing, consumer protection law, conspiracy, and any other

claim that may be supported by the allegations of this complaint.

**WHEREFORE**, the Plaintiff prays for an order that will:

A.  Enjoin the private party defendants and their co-conspirators and any

successors, if necessary, to stop from trying to sell the Plaintiff's property

with his personal belongings inside now and in the future.

B.  Order the defendants to do what is necessary to restore possession of the

property to the Plaintiff and the members of his household.

C.  Request for a trial by jury.

D.  Order the defendants, collectively, to pay the Plaintiff for physical,

economic, and emotional damages that were suffered, and are ongoing and

continuing.

E.  Order the defendants to pay punitive damages.

F.  Provide injunctive, declaratory, or other relief as may be appropriate,

including attorney fees, reasonable costs and expenses, as authorized by 42

U.S.C. Section 1988.

Respectfully prepared by,

Nathaniel Satterfield Jr., the Pro-se Plaintiff                    May 3, 2022

**VERIFICATION:** Under threat of penalty for perjury as provided for by law, I,

Nathaniel Satterfield Jr., over the age of 21, and a resident of Cook County

Illinois, affirm the foregoing in my FHA/Civil Rights Complaint to be true and

correct to the best of my knowledge, information, and belief.

Signature: _____.    Date: _May 3___, 2022.

Name: Nathaniel Satterfield Jr. (Pro-se Plaintiff)

Address: 1411 South 20th Avenue, Maywood IL 60153

Phone: (708)615-3412          Email: nathaniel7180@att.net